# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTWYNE WHALEY,<br><br>     *Plaintiff,*<br><br> v.<br><br>TONY B. WATTLINGTON, et al.,<br><br>     *Defendants.* | CIVIL ACTION<br><br>NO. 23-1344 |

**PAPPERT, J.**              **November 17, 2023**

### MEMORANDUM

  In April of 2021, Antwyne Whaley's son told his elementary school counselor during a Zoom call that he did not come to school that day because he injured his face falling off a bed while horsing around with a friend. The school counselor asked the child if that was really how he was hurt, ostensibly to satisfy himself the child was not a victim of abuse in the home. Mr. Whaley overheard this exchange, stepped in front of his son's computer and corroborated the child's statement.

  The counselor nonetheless submitted a report of suspected abuse that was investigated with, according to Whaley, the investigator talking to him, visiting the home and concluding that there were "no signs of abuse." But Whaley, despite requesting one, has never seen the report prepared by the school counselor or been formally told the investigation was completed or what its findings were.

  Proceeding *pro se*, Whaley sued the Philadelphia Department of Human Services, the Philadelphia School District, Elkins Elementary School, School District

1

Superintendent Tony B. Watlington,[1] Elkins's principal Charlotte Gillum-Maddox, former Elkins counselor Franklin Hinton, and social workers Christopher Li and Tyrie Sealy.  His complaint includes two claims over which the Court has subject matter jurisdiction—a *Monell* claim under 42 U.S.C. § 1983 and a claim under Title IX of the Education Amendments of 1972.  The *Monell* claim fails because Whaley alleges no facts which could establish a violation of his constitutional rights.  And the purported claim under Title IX alleges no facts which could show that Whaley was discriminated or excluded from participation in a program or activity on the basis of sex.  The Court dismisses with prejudice the federal claims and declines to exercise supplemental jurisdiction over the remaining state law claims.[2]

## I

In April of 2021, Whaley's son met over Zoom with a counselor, Franklin Hinton, as part of the school's "check-in" program.  (Compl. ¶ 20).  Hinton noticed an allegedly "baseball sized" lump on Whaley's son's head and asked the child why he did not attend school that day.  (*Id.* ¶ 21).  According to Whaley, his son said he was "jumping on the bed with my friend and fell off the bed and hit my face."  (*Id.* ¶ 22).  After Hinton asked the child if that was "what really happened," Whaley joined the discussion and reiterated that his son was injured when he fell off the bed.  (*Id.* ¶¶ 23–24).

---

[1] Watlington's name is misspelled as "Wattlington" throughout the complaint.

[2] Whaley includes a claim for "injunctive and declaratory relief" seeking an "injunction from further retaliation" and all reports, notes and results of the investigation.  (*Id.* ¶ 63).  Injunctive relief is a remedy, not an independent cause of action.  *Houser v. Feldman*, 600 F. Supp.3d 550, 572 (E.D. Pa. 2022).

Hinton filed a report of suspected abuse and DHS sent social workers Christopher Li and Tyrie Sealy to investigate. (*Id.* ¶ 28). Li and Sealy made multiple attempts to visit Whaley's home and left two letters for Whaley informing him he would face court actions if he did not respond. Eventually, Li met with Whaley and his son, and he allegedly told Whaley the report said the boy was in "bad shape" and would likely be removed from the home. (*Id.* ¶ 29). After the visit, however, Li purportedly told Whaley there were no signs of abuse let alone a baseball sized lump on his head. (*Id.*)

Insisting Hinton's report was false and malicious,[3] Whaley complained to the School District, Gillum-Maddox and the Philadelphia Inspector General's Office. (*Id.* ¶¶ 31–44). While Whaley claims on one hand the Defendants ignored his requests, on the other he alleges Gillum-Maddox offered to meet with him and even "adjust [her] schedule" to do so. (*Id.* ¶ 44). Whaley, however, declined the offer, saying he did not feel comfortable meeting with her. (*Id.* Ex. 1, ECF 1-1, at 4). And despite numerous efforts to obtain the DHS report, he has yet to receive a copy. (*Id.* ¶ 7). Nonetheless, he has been told his requests were made "to the right department unit" and that the City has certain procedures to be followed when requesting such records.[4] (Resp. To Mot. To Dismiss, ECF 26, at 26). Frustrated, he turned to the courts, bringing claims under 42 U.S.C. § 1983, Title IX of the Education Amendments of 1972 and Pennsylvania state law. Defendants move to dismiss Whaley's complaint in its entirety.

---

[3] Whaley asserts that Hinton "retaliated" against him by filing the report of suspected abuse. (Compl. ¶ 48). While Whaley does not explicitly make a retaliation claim, corroborating his son's account of his injury cannot be the basis for one.

[4] Whether Whaley ever followed those procedures remains unclear.

II

To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded facts "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Well-pleaded factual allegations are presumed to be true; the Court must "then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. But this presumption "attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotations and citation omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016)).

III

Whaley's § 1983 claim is difficult to discern. Interpreting it liberally, he appears to assert a *Monell* claim against all Defendants. The School District is the only party against which Whaley can assert such a claim. *See, e.g.*, *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720 (3d Cir. 1989). DHS is neither an individual nor a corporation, but rather an agency of the City of Philadelphia. 53 Pa. C.S. § 16257; *Miller v. City of Phila.*, No. 96–3578, 1997 WL 476352, at *6 (E.D. Pa. Aug. 19, 1997).

4

A

To state a *Monell* claim, Whaley must show (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom. *Wilson v. City of Phila.*, 177 F. Supp. 3d 885, 908 (E.D. Pa. 2016) (citing *Monell v. Department of Social Service*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Critically, without an underlying constitutional violation, there can be no *Monell* claim. *Knellinger v. York Street Property Development, LP*, 57 F. Supp.3d 462, 471 (E.D. Pa. 2014). Whaley does not explicitly allege an underlying constitutional violation, but the Court reads his complaint to allege his due process rights, either substantive or procedural, were violated during the child abuse investigation. (Compl. ¶ 56).

1

The Due Process Clause of the Fourteenth Amendment prohibits the government from interfering in familial relations unless the government adheres to the requirements of procedural and substantive due process. *Croft v. Westmoreland Children and Youth* Services, 103 F.3d 1123, 1125 (3d Cir. 1997). To determine whether Whaley's constitutional rights were violated, the Court must balance the fundamental liberty interests of the family unit with the compelling interests of the state in protecting children from abuse. *Id.* A disruption of family life caused by the child abuse investigation "does not, in and of itself, constitute a constitutional deprivation." *Id.* at 1125–26.

The Fourteenth Amendment "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). The touchstone of due process is the protection against arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). For liability to attach, an individual's conduct must reach a level of gross negligence or arbitrariness that "shocks the conscience." *Miller v. City of Phila.*, 174 F.3d 368, 375–76 (3d Cir. 1999). Mere negligence will not suffice to violate a parent's substantive due process right. *Id.* at 376. The "exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." *Id.* at 375.

Even when viewing the facts alleged in the light most favorable to Whaley, they could not state a plausible claim for violation of his substantive due process rights. The investigation was prompted after Hinton suspected potential abuse after Whaley's son told him he was injured and thus did not attend school in person that day. (Compl. ¶¶ 21–22). Hinton merely followed up on the child's statement, asking if falling from the bed "is what really" caused his injury. *See* 23 Pa. C.S. § 6312 (allowing any person with "reasonable cause to suspect" child abuse to make a report of the suspected abuse). Moreover, the social workers' conduct, as Whaley describes it, was not overly intrusive. Li and Sealy attempted to meet with Whaley multiple times, left him letters to contact them, and eventually scheduled a visit with Whaley and his son, where Li allegedly interviewed the child in the kitchen and told Whaley he saw no signs of abuse. (Compl. ¶¶ 26–29). After their visit, no further action was taken, and Gillum-Maddox made herself available to discuss the incident. (*Id.* ¶¶ 30, 40, 44). This conduct is nowhere

6

close to the arbitrary behavior that "shocked the conscience" in *Croft*, where the investigator, lacking objectively reasonable suspicion abuse occurred, demanded the parent leave the home until the investigation was complete or she would remove the child and place her in foster care. *Croft*, 103 F.3d at 1124. Hinton filed his report after noticing a lump on the boy's head and the child's acknowledgement of an injury, and the social workers neither forced Whaley to leave the home during the investigation nor deprived him of custody. *See Rinderer v. Delaware County Children and Youth Services,* 703 F. Supp. 358, 361 (E.D. Pa. 1987) (holding that no cause of action exists under § 1983 where parent was not separated from children); *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275–76 (2d Cir. 2011) (holding that while the demands and threats from an investigation may be stressful or infuriating, where there is not even a temporary loss of custody, a substantive due process claim cannot occur).

2

Whaley also fails to allege facts which could establish a violation of his procedural due process rights. Specifically, he does not contend he was deprived of any individual interest under the Fourteenth Amendment. *Mulholland v. Government County of Berks, Pa.,* 706 F.3d 227, 238 (3d Cir. 2013) (noting a procedural due process claim under § 1983 requires an individual be deprived of life, liberty, or property before assessing whether the procedures available to him did not provide due process of law). Whaley has no right to be free from a child abuse investigation. *Croft,* 103 F.3d at 1126 ("The right to familial integrity . . . does not include a right to remain free from child abuse investigations."). There was no compulsory provision of medical care, and

Whaley was neither separated from the home nor did he face criminal charges.[5]  *See Phillips v. Cnty of Orange,* 894 F.Supp.2d 345, 376–77 (S.D.N.Y 2012).  While Whaley claims Li told him the report indicated his son was in such bad shape he would need to be removed, the child was not taken from Whaley's custody and Li left the home only after telling Whaley he saw no signs of abuse.  (Compl. ¶ 29).

Additionally, Whaley's assertion that he was not afforded a "meeting or hearing to present his evidence," (*id.* ¶ 56), is undercut by other allegations in the complaint.  He states Gillum-Maddox offered to meet with him to discuss the matter and even offered to adjust her schedule to do so.  (*Id.* ¶¶ 35, 40, 44).  Whaley declined the invitation, saying he did not "feel comfortable meeting with [Gillum-Maddox] and her staff" after the filing of the allegedly false report.  (*Id.* Ex. 1, at 4).

The complaint also suggests the Defendants have been responsive to Whaley's concerns.  His request that his son be removed from the check-in program was honored, (*id.* ¶ 35), and the City Solicitor's Office confirmed his request for the DHS case record and referred him to a child welfare attorney to obtain it.[6]  (*Id.* Ex. 1, at 13).

---

[5] An intrusive medical examination may rise to the level of familial interference. *Doe v. Mattingly*, No. 06–5761, 2006 WL 3498564, at *2–3 (E.D.N.Y. Nov. 6, 2006).  However, Whaley does not allege any medical examination occurred during the investigation.  Again, Whaley claims Li observed "no signs of abuse let alone a baseball sized lump" while meeting with the boy in the kitchen.  (Compl. ¶ 29).

[6] Because Whaley failed to allege a constitutional violation, he cannot state a *Monell* claim, *Knellinger,* 57 F. Supp.3d at 471, and the Court need not address whether he alleged that a policy, custom or failure to train caused such a violation.  In any event, Whaley's conclusory assertions that the School District "failed to train its employees" and did not "have certain policies in place" to address potential false reporting would not satisfy the 12(b)(6) standard.  (Compl. ¶¶ 6, 57, 59).

Whaley does not allege a history of employees mishandling suspected child abuse reports, and thus fails to plead the School District was on actual or constructive notice that a particular omission from their training program caused constitutional violations such that they could be deemed deliberately indifferent for retaining the program.  *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520

IV

To assert a Title IX claim against the School District, Whaley must prove that on the basis of sex he was excluded from participation in, denied the benefits of, or subjected to discrimination "under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681.

None of the complaint's allegations, no matter how liberally construed, could establish a Title IX claim. Whaley's beef is with the allegedly false report of child abuse and the subsequent investigation, none of which implicates Title IX. Though he says he had to remove his son from the school, the complaint does not indicate that was the result of any discrimination on the basis of sex. (Compl. ¶ 12). Whaley's bare recitation that the School District "intentionally and willfully and with deliberate indifference violated" Title IX does not suffice. (*Id.* ¶ 62).

---

U.S. 397, 407 (1997). He also has not pled facts sufficient to fall within the "narrow range of circumstances" of "single-incident" theory of liability. *See id.* at 409. Whaley has not alleged any other instances of false reporting, which while not sufficient to show a pattern of constitutional violations, would be relevant to whether Whaley's purported injury was a "highly predictable consequence" of the failure to train employees on handling false reporting and reporting during Zoom sessions. *See Thomas v. Cumberland County*, 749 F.3d 217, 225 (3d Cir. 2014).

The essence of *Monell* is that a municipality should not be vicariously liable for the acts of its officials, otherwise, "'failure to train' would become a talismanic incantation producing municipal liability '[i]in virtually every instance where a person has had his or her constitutional rights violated by a city employee'—which is what *Monell* rejects." *Connick v. Thompson*, 563 U.S. 51, 74 (2011) (Scalia, J., concurring) (quoting *Canton v. Harris*, 489 U.S. 378, 392 (1989). Even if Hinton made an incorrect decision, it is not enough for the Court to infer the School District disregarded a known or obvious risk to Whaley. *See generally Buoniconti v. City of Phila.*, 148 F. Supp.3d 425, 443 (E.D. Pa. 2015).

V

With the dismissal of Whaley's federal claims, the Court declines to exercise supplemental jurisdiction over his state law claims.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . [if] the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that when federal claims are dismissed before trial, federal courts should not separately entertain pendent state claims).  The essence of Whaley's complaint concerns the Defendants handling of the child abuse report and investigation, procedures that are governed by state statutes and better litigated in state court.  Accordingly, the Court dismisses Counts II and III without prejudice to refiling in state court.[7]

VI

While Federal Rule of Civil Procedure 15 instructs courts to "freely give" leave to amend, leave may be denied if, among other things, amendment would be futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  Portions of Whaley's complaint and the attached emails, messages and letters undermine his claim that a constitutional violation occurred, nothing he alleges could state a claim under Title IX, and amendment of the dismissed federal claims would be futile.

An appropriate Order follows.

---

[7] Following a jurisdictional dismissal of state claims under 28 U.S.C. § 1367, a plaintiff has the amount of time that remained on the limitations period at the time they filed the federal action plus a thirty-day grace period to re-file in state court.  *Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018).

BY THE COURT:

**_/s/ Gerald J. Pappert_**

GERALD J. PAPPERT, J.